UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

MALIK MINGO, ONIQUE MORRIS, and
CHRISTIAN SIMS,

      Plaintiffs,

   - against -

OPTUM360 SERVICES, INC., OPTUM 360, LLC,
UNITED HEALTH WORLD GROUP, INC.,
NORTHWELL HEALTH, INC., NORTHWELL
HEALTHCARE, INC., LISA RODRIGUEZ,
*individually*, LISA PERRY, *individually*, KELVIN
IGLESIAS, and MICHELLE PULEO, *individually*,

      Defendants.

----------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

   Plaintiffs, MALIK MINGO, ONIQUE MORRIS, and CHRISTIAN SIMS, by their

attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complain of

Defendants, upon personal knowledge, as well as information and belief, by alleging and

averring as follows:

<u>**NATURE OF THE CASE**</u>

1.  This is a case about a medical facility who allows some of its non-minority employees to

  have free-range to do whatever they want, while minority employees are required to walk

  a straight line or be terminated.

2.  Plaintiffs bring this action alleging that Defendants have violated Title VII of the Civil

  Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, *et seq*. (amended in 1972, 1978 and

  by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); the New York State

  Human Rights Law, New York State Executive Law, §§ 296, *et seq.* ("NYSHRL"); and

  the common law.

3.      Plaintiffs seek damages, as well as injunctive and declaratory relief, to redress the injuries they have suffered – physical, emotional and pecuniary -- as a result of being discriminated and retaliated against by their employer on the basis of their race (African American) and national origin (African and/or Jamaican), which – for each of them -- ultimately resulted in the unlawful termination of their employment solely due to their constituency in the foregoing protected categories.

**JURISDICTION, VENUE AND PROCEDURAL PREREQUISITES**

4.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

5.      The Court has supplemental jurisdiction over the claims of Plaintiffs brought under state law pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Eastern District of New York or the acts complained of occurred therein.

7.      Plaintiffs are properly joined in this action pursuant to Fed. R. Civ. P. 20(a)(1) as question of law and fact common to each arise in this action.

8.      By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 17, 2018; (b) receiving a Notice of Right to Sue from the EEOC on April 2, 2019; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiffs have each satisfied all of the procedural prerequisites for the commencement of the instant action. Copies of the respective Notices of Right to Sue are annexed hereto collectively as Exhibit A.

## THE PARTIES

9.    At all times relevant hereto, Plaintiff MALIK MINGO ("MINGO") is a resident of the State of New York and County of Queens.

10.   At all times relevant hereto, Plaintiff ONIQUE MORRIS ("MORRIS") is a resident of the State of New York and County of Queens.

11.   At all times relevant hereto, Plaintiff CHRISTIAN SIMS ("SIMS") is a resident of the State of New York and County of Queens.

12.   Plaintiffs, MINGO, MORRIS, and SIMS, are collectively referred to herein as "Plaintiffs."

13.   All three Plaintiffs are African American.

14.   At all times relevant hereto, Defendant OPTUM360 SERVICES, INC., ("OPTUM360 SERVICES") was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of Delaware. Defendant OPTUM360 SERVICES has a principal place of business located at 11000 Optum Circle, Eden Prairie, Minnesota 55344.

15.   Upon information and belief, Defendant OPTUM360 SERVICES employs over 200 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiffs are proceeding herein.

16.   At all times relevant hereto, Defendant OPTUM360, LLC ("OPTUM360") was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of Delaware. Defendant OPTUM360is headquartered in 11000 Optum Circle, Eden Prairie, Minnesota 55344, but also maintains a principal place of business located at 28 Liberty Street, New York, New York 10005.

17.     Upon information and belief, Defendant OPTUM360 employs over 200 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiffs are proceeding herein.

18.     At all times relevant hereto, Defendant UNITED HEALTH WORLD GROUP, INC, ("UNITED") was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York. Defendant UNITED is headquartered in 9900 Bren Road E, Minnetonka, Minnesota 55343, but also maintains a principal place of business located at 228 Park Avenue South, #85556, New York, New York 10003.

19.     Upon information and belief, Defendant UNITED employs over 200 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiffs are proceeding herein.

20.     At all times relevant hereto, Defendant NORTHWELL HEALTH, INC., ("NORTHWELL HEALTH") was and is a domestic not-for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York. Defendant NORTHWELL HEALTH is headquartered at 2000 Marcus Avenue, New Hyde Park, New York 11042.

21.     Upon information and belief, Defendant NORTHWELL HEALTH employs over 200 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiffs are proceeding herein.

22.     At all times relevant hereto, Defendant NORTHWELL HEALTHCARE, INC., ("NORTHWELL HEALTHCARE") was and is a domestic not-for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York. Defendant NORTHWELL HEALTHCARE is headquartered at 2000 Marcus Avenue, New Hyde

Park, New York 11042.

23.     Upon information and belief, Defendant NORTHWELL HEALTHCARE employs over 200 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiffs are proceeding herein.

24.     Defendants, OPTUM360 SERVICES, OPTUM360, UNITED, NORTHWELL HEALTH, and NORTHWELL HEALTHCARE (together as "Corporate Defendants"), are joint employers. As such, there are commonalities of hiring, firing, discipline, pay, insurance, records, and supervision.

25.     By way of first example, Defendant OPTUM360 SERVICES is listed as Plaintiffs' employer on their paystubs.

26.     By way of a second example, Defendant OPTUM360 SERVICES is listed as Plaintiff MORRIS' employer on his W2.

27.     By way of a third example, upon information and belief, Defendant NORTHWELL HEALTHCARE is a subsidiary of Defendant NORTHWELL HEALTH.

28.     By way of a fourth example, Defendants, NORTHWELL HEALTHCARE and NORTHWELL HEALTH, share the same principal place of business.

29.     By way of a fifth example, Defendants, OPTUM360 SERVICES and OPTUM 360, are subsidiaries of Defendant UNITED.

30.     By way of a sixth example, Defendants, OPTUM360 SERVICES and OPTUM 360, share the same principal place of business.

31.     By way of a seventh example, Defendant OPTUM 360 does business as Defendant OPTUM360 SERVICES.

32.     Upon information and belief, Defendant OPTUM360 SERVICES and/or Defendant

OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, own and/or operate a medical facility located at 300 Community Drive, Manhasset, New York, 11030, where the discriminatory and retaliatory conduct took place.

33.     At all relevant times hereto, Plaintiff MINGO was an employee of Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE.

34.     At all relevant times hereto, Plaintiff MORRIS was an employee of Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE.

35.     At all relevant times hereto, Plaintiff SIMS was an employee of Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE.

36.      Upon information and belief, at times relevant hereto, Defendant LISA RODRIGUEZ ("RODRIGUEZ") was and is an individual residing in the State of New York, as well as an employee of Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, holding the position of "Manager"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiffs' employment or to otherwise influence the decision making regarding same.

37.     Upon information and belief, Defendant RODRIGUEZ is of Hispanic descent.

38.     Upon information and belief, at all times relevant hereto, Defendant LISA PERRY ("PERRY") was and is an individual residing in the State of New York, as well as a Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED, holding the position of "Patient Access Supervisor"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiffs' employment or to otherwise influence the decision making regarding same.

39.     Upon information and belief, Defendant PERRY is Caucasian.

40.     Upon information and belief, at all times relevant hereto, Defendant KELVIN IGLESIAS ("IGLESIAS") was and is an individual residing in the State of New York, as well as an employee of Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, holding the position of "Patient Access Supervisor"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiffs' employment or to otherwise influence the decision making regarding same.

41.     Upon information and belief, Defendant IGLESIAS is of Hispanic descent.

42.     Upon information and belief, at all times relevant hereto, Defendant MICHELLE PULEO ("PULEO") was and is an individual residing in the State of New York, as well as an employee of Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, holding the position of "Registered Nurse"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiffs' employment or to otherwise influence the decision making regarding same.

43.     Upon information and belief, Defendant PUILO is Caucasian.

44.     Defendants, OPTUM360 SERVICES, OPTUM360, UNITED, NORTHWELL HEALTH,

NORTHWELL HEALTHCARE, RODRIGUEZ, PERRY, IGLESIAS, and PUELO, are collectively referred to herein as "Defendants."

### *Facts Material to All Plaintiffs – The NBA Finals Incident*

45.   On or about June 3, 2018, Plaintiffs were working in the emergency room department on a relatively slow day where they usually have 90-to-120 patients, but this time, there were less than 60 patients for which their services were required. This incident took place during the 3:00 P.M. – 11:00 P.M. shift.

46.   On or about June 3, 2018, Plaintiffs were periodically checking on the score of the NBA Finals between the Cleveland Cavaliers and the Golden State Warriors, along with the majority of the staff working in the emergency room department during this particular shift. The Plaintiffs all completed their work, there were no complaints made by any patients, and the NBA Finals were only displayed on one screen while they used the other computers to complete their work efficiently and promptly.

47.   Without their knowledge or consent, Plaintiffs were photographed checking the score of the game by Defendant PULEO, who brought the photograph to the attention of management. Defendant PULEO, it should be noted, had been previously discovered watching a football game in the fall, in which she was slightly reprimanded and allowed to return to work without any issue.

48.   Plaintiffs did not receive any communication from management regarding their behavior, and neither, it should be noted, *was anyone else who was watching the game in the emergency room department during the same shift*.

49.   On or about June 5, 2018 Plaintiffs were informed that management would be investigating the issue with regards to each Plaintiff. At no point was any other employee

investigated for their behavior during the June 3rd shift in which the Plaintiffs were not the only employees checking in on the NBA Finals.

50.     On or about June 7, 2018, Plaintiffs were each terminated for their participation in checking the score of the NBA Finals on or about June 3, 2018, but no one else was, even though the Plaintiffs were not the only ones doing so.

51.     At no point during any of this were the Plaintiffs provided written or verbal warnings, formal write-ups, nor were they ever provided an opportunity to respond to the allegations against them.

52.     In addition, at no point during any of this were anyone else who worked the particular shift and watched the NBA Finals investigated, written up or terminated.

53.     The result of this incident was the final straw in a series of dubious actions taken on the part of the Defendants, from failing to adequately address racist remarks against the Plaintiffs, in the past, to purposely splitting up and isolating the Plaintiffs when no other employees were made to suffer such degrading behavior.

54.     It should be noted, these dubious actions include disparate treatment between the Plaintiffs who were wrongfully terminated and Defendant PULEO who engaged in similar behavior in the past and was only given a slap on the wrist. Defendant PULEO engaged in despicable behavior to get three young, ambitious, hard-working young black men fired for the *very same thing* in which she received a slap on the wrist.

### *Facts Material to Plaintiff MINGO*

55.     On or about October 15, 2017, Plaintiff MINGO was hired by Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, as an

"Emergency Department Registrar," earning approximately $18.25 per hour.

56.    Plaintiff MINGO had an expected 2019 salary of $37,960.00, plus the value of his benefits.

57.    On or about June 3, 2018, Plaintiff MINGO along with Plaintiffs, MORRIS and SIMS, were singled out by Defendant PULEO when she photographed the three of them checking in on the score of the NBA Finals.

58.    On or about June 7, 2018, Plaintiff MINGO was wrongfully terminated by Defendant RODRIGUEZ, was provided zero written or verbal warnings regarding the incident, was provided zero written statements or write-ups regarding the incident, and furthermore, was prevented from responding to the allegations.

59.    During the meeting with Defendant RODRIGUEZ, Plaintiff MINGO was informed that his termination was due to "integrity issues" according to Defendant RODRIGUEZ, who failed to explain what exactly the integrity issues were. When Plaintiff MINGO attempted to respond to this allegation, Defendant IGLESIAS cut off Plaintiff MINGO, shutting him up, and stating "this is not up for discussion."

60.    As a result of the June 7, 2018 termination meeting, Plaintiff MINGO felt belittled and that his services to the Corporate Defendants were of little value.

61.    Upon information and belief, as a result of his wrongful termination, Plaintiff MINGO experienced embarrassment and humiliation at the hands of the Corporate Defendants, specifically the stripping away of hope that the Plaintiff had, that if he just worked hard and produced above and beyond, he would be treated fairly. Plaintiff MINGO learned firsthand what life was like for a black man in the American workforce, causing him to have issues sleeping and experiencing waves of depression.

62.  Upon information and belief, as a result of his wrongful termination, Plaintiff MINGO's mood fluctuates widely from day-to-day, he has isolated himself, and he socializes far less than in the past.

### Facts Material to Plaintiff MORRIS

63.  In or around June of 2017, Plaintiff MORRIS was hired by Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, as a "Patient Access Representative," earning approximately $17.80 per hour.

64.  Plaintiff MORRIS had an expected 2019 salary of $37,024.00, plus the value of his benefits.

65.  In or around the spring of 2017, Plaintiff MORRIS was racially profiled by another employee of the Defendants, one Susan Clarke.

66.  Plaintiff MORRIS was training a new employee, who happened to be Jamaican as is the Plaintiff. Ms. Clarke looked at the trainee and stated, "I thought all Jamaicans had dark skin," whereupon Plaintiff MORRIS politely explained that not all individuals of Jamaican decent look the same. Whereupon, Ms. Clarke interjected again with a hint of sarcasm in her voice "why can't I call you the 'n' word."

67.  At this point Plaintiff MORRIS brought this incident to the attention of management, but nothing of substance was ever done about it. Management thereby acquiesced to Ms. Clarke's discriminatory conduct.

68.  Upon information and belief, Plaintiff MORRIS trained both Plaintiffs, SIMS and MINGO, when they were hired, and developed the type of brotherly bond every employer should seek between their employees. Plaintiffs became fast friends during their

employment.

69.     In or around the Winter of 2017-2018, Plaintiff MORRIS began to notice that his coworkers did not like how well Plaintiffs got along together at work. Defendants, PERRY and IGLESIAS, who were responsible for assigning schedules for Plaintiffs, intentionally began separating them.

70.     On or about June 3, 2018, while the entire emergency room staff was engaged in keeping up the score of the NBA Finals, Plaintiff MORRIS completely cleared his assignments and offered to aid Plaintiff SIMS with his work. Plaintiffs kept working while the game was on another screen at the desk. Plaintiffs completed their work efficiently and correctly.

71.     On or about June 5, 2018, Plaintiff MORRIS was called into the management office whereupon he was told that there was a photograph depicting the Plaintiffs watching the NBA Finals on or about June 3, 2018. Plaintiff MORRIS explained the entire scenario, including the fact that he had finished his work, that he was aiding Plaintiff SIMS with his work, that all of the work was completed efficiently and correctly, and that, at no point were any of the Plaintiffs glued to the screen as if to ignore their job responsibilities.

72.     On or about June 6, 2018, Plaintiff MORRIS was called into management's office once again, and this time, Plaintiff MORRIS was terminated.

73.     Upon information and belief, as a result of his wrongful termination, Plaintiff MORRIS has experience periodic incidents of depression, including random mood swings.

74.     Upon information and belief, as a result of his wrongful termination, Plaintiff MORRIS' reputation has been tarnished, had begun to drink more in order to cope with his

emotional distress, has radically changed his eating habits, and no longer regularly attends the gym.

75.   Upon information and belief, as a result of his wrongful termination, Plaintiff MORRIS has become more argumentative with his peers, more combative with his family, and feels embarrassed and ashamed to talk to his former coworkers due to his abrupt exit from the Defendants' employment.

***Facts Material to Plaintiff SIMS***

76.   On or about August 21, 2017, Plaintiff SIMS was hired by Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, as a "Patient Access Representative."

77.   At the time of Plaintiff SIMS' termination, he was earning $800.00 to $1000.00, bi-weekly, at an average hourly wage of $20.30.

78.   Plaintiff SIMS had an expected 2019 salary of $52,000.00, plus the value of his benefits.

79.   In or around the fall of 2017, Plaintiff SIMS overheard Defendant PULEO make overtly racist remarks during work hours, specifically regarding the issue of Colin Kaepernick kneeling during the national anthem.

80.   Specifically, Plaintiff SIMS heard Defendant PULEO say, "those people are always complaining about something, they have no respect" and "how the whole thing doesn't make sense because they are always trying to protest something."

81.   In or around November of 2017, Plaintiff SIMS began to be targeted during lunch breaks by the nursing administrators. Specifically, Plaintiff SIMS noticed the nursing supervisors pointing out the Plaintiffs for being "loud" and telling them to "be quiet." Furthermore,

the nursing supervisors would make snide, racially tinged remarks such as "they always being loud" and "they need to shut up."

82.    From this point forward, Plaintiff SIMS began to feel very uncomfortable in the work environment because these same nursing supervisors would be watching him not only during lunch breaks, but also in the emergency room during work hours.

83.    In or about January 2018, Plaintiff SIMS began noticing that he (as well as his fellow co-plaintiffs) were being separated or split up during the shifts they worked together.

84.    Upon information and belief, no other representatives were ever separated or isolated from another.

85.    In or about June of 2018, Plaintiff SIMS was checking in on the score of the NBA Finals during working hours along with the rest of the emergency room.

86.    Upon information and belief, a coworker of the Plaintiffs snapped a picture of the Plaintiffs checking the score of the NBA Finals and reported it to upper management.

87.    On or about June 6, 2018, Plaintiff SIMS was terminated from his employment with the Defendants.

88.    Upon information and belief, as a result of his wrongful termination, Plaintiff SIMS feels emotionally distraught and stripped of the ambitious energy he once had, and as a result, feels that "hope has been" taken away from him. Plaintiff SIMS felt as if he worked hard and showed up every day with the intent to improve, he would be treated fairly, yet this series of episodes has unfortunately reinforced the belief that because of his skin color no one will treat him as an equal.

89.    Upon information and belief, as a result of his wrongful termination, Plaintiff SIMS' weight has ballooned from 200 to 216 as his eating habits and lack of sleep have changed

dramatically.

90.   Upon information and belief, as a result of his wrongful termination, Plaintiff SIMS'
      desire to socialize with the outside world has diminished, because he feels ashamed and
      embarrassed and that because he is a black man, what is the point of socializing if he is
      never going to be treated as an equal.

### *Additional Allegations by Plaintiffs*

91.   Plaintiffs feel offended, disturbed, and humiliated by the blatantly unlawful,
      discriminatory and retaliatory treatment they have suffered at the hands of Defendants.

92.   Plaintiffs have been unlawfully discriminated and retaliated against on the basis of their
      race (African American) and/or national origin (African and/or Jamaican).

93.   Defendants' actions and conduct were intentional and aimed at harming Plaintiffs.

94.   As a result of the acts and conduct complained of herein, Plaintiffs have suffered a loss of
      income, the loss of a salary, bonus, benefits, and other compensation, which such
      employment entails.

95.   Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering,
      inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have
      further experienced emotional distress.

96.   The above are just some of the ways Defendants discriminated and retaliated against
      Plaintiffs while employing him.

97.   Defendants' conduct has been malicious, willful, outrageous, and conducted with full
      knowledge of the law. As such, the Plaintiffs demands punitive damages.

98.   As such, Plaintiffs demands punitive damages as against all Defendants, jointly and
      severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION AND RETALIATION UNDER TITLE VII
## (Not Against Individual Defendants)

99. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

100. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, each violated Title VII's prohibition against discrimination and retaliation in employment based, in whole or in part, upon an employee's race (black) and/or ethnicity/national origin (African), whether actual or perceived.

101. Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e, *et seq.*, by discriminating and retaliating against Plaintiffs because of their race (black) and/or ethnicity/national origin (African), whether actual or perceived.

102. As a result of the acts and conduct complained of herein, Plaintiffs have each suffered and will each continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that their employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures;

and other non-pecuniary losses and special damages.

103.    Accordingly, as a result of the unlawful conduct of Defendant OPTUM360 SERVICES and/or Defendant OPTUM360 and/or Defendant UNITED and/or Defendant NORTHWELL HEALTH, and/or Defendant NORTHWELL HEALTHCARE, Plaintiffs have each been damaged as set forth herein and each is entitled to the maximum compensation available to each of them under this law.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE LAW (Against All Defendants)

104.    Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

105.     Executive Law § 296 provides that:

> 1.    It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

106.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiffs because of their race (black) and/or ethnicity/national origin (African and/or Jamaican), whether actual or perceived.

107.    As a result of the acts and conduct complained of herein, Plaintiffs each have suffered and will each continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that their employment entailed; severe emotional, psychological and

17

physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

108.   Accordingly, as a result of Defendants' unlawful conduct, Plaintiffs have each been damaged as set forth herein and each is entitled to the maximum compensation available to each of them under this law.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW AIDING AND ABETTING**
**(Against Individual Defendants Only)**

109.   Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

110.   New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

111.   Defendants RODRIGUEZ each engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct against each Plaintiff.

112.   Defendants PERRY engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct against each Plaintiff.

113.   Defendants IGLESIAS engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct against each Plaintiff.

114.   Defendants PUELO each engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and

coercing the discriminatory conduct against each Plaintiff.

115. As a result of the acts and conduct complained of herein, Plaintiffs each have suffered and will each continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that their employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

116. Accordingly, as a result of the unlawful conduct of Defendants RODRIGUEZ, PERRY, IGLESIAS and PUILO, Plaintiffs have each been damaged as set forth herein and each is entitled to the maximum compensation available to each of them under this law.

## JURY DEMAND

117. Plaintiffs each requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiffs respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*; and the New York State Human Rights Law, New York State Executive Law, §§ 296, *et. seq.*, in that Defendants discriminated and retaliated against each Plaintiff on the basis of her race (black) and/or ethnicity/national origin (African and/or Jamaican), whether actual or perceived;

B. Awarding damages to each Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make each of them whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding each Plaintiff compensatory damages for mental, emotional and physical

injury, distress, pain and suffering and injury to her reputation in an amount to be proven at trial;

D.     Awarding Plaintiffs punitive damages;

E.     Awarding Plaintiffs attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action;

F.     Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices against each of them.

Dated: New York, New York
      May 23, 2019

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By: _____
Parisis G. Filippatos (PF1593)
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
PFilippatos@tpglaws.com